IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**LEONARD CROSBY,**

   **Petitioner,**

**v.**                  **Criminal Action No. 2:93cr163**
                    **Civil Action No. 2:04cv178**

**UNITED STATES OF AMERICA,**

   **Respondent.**

## ORDER and OPINION

   Pending before the court is a Motion for Vacation of Sentence or Reinstatement of Appellate Rights under 28 U.S.C. § 2255 or, in the Alternative, a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("the petition"), filed by Leonard Crosby ("the petitioner"), on March 11, 2004. In this petition, the petitioner claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel. On April 27, 2005, the petitioner filed a supplemental memorandum in which he seeks to rely on the Supreme Court's decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004) and United States v. Booker, 125 S. Ct. 738 (2005). The petitioner argues that these decisions apply retroactively to his case.

   The government responded to the petitioner's initial petition on June 29, 2004 and the petitioner filed a reply memorandum on July 12, 2004. The petitioner then submitted a supplemental memorandum on April 27, 2005. After reviewing the briefs submitted by the parties, the court finds that the petition is time-barred by the statute of limitations imposed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 110 Stat. 1214

(1996). Additionally, the court finds that the petitioner has waived his right to make a collateral attack on his sentence or conviction. Accordingly, the petition must be **DISMISSED**.

## I. Background

In December 1993, the petitioner was charged in a multi-count indictment returned by a federal grand jury with violations of the federal drug laws. See 21 U.S.C. §§ 841(a)(1), 846. The defendant was arrested in October 1999 and entered into a Plea Agreement with the government on January 4, 2000, whereby the defendant agreed to plead guilty to a conspiracy charge in exchange for the government's agreement to dismiss a distribution charge. The Plea Agreement contained waivers of the petitioner's right to appeal and the right to collaterally attack his sentence or conviction. The petitioner was sentenced on March 17, 2000 to a term of imprisonment of 225 months. The Judgment and Commitment Order was filed on March 20, 2000. The defendant did not appeal his conviction or sentence, nor has he previously sought post-conviction relief.

The petitioner first attempted to file his petition on June 9, 2003, via his retained counsel, Mr. Jeffrey M. Brandt. Thereafter, on June 12, 2003, this court received an Application to Qualify as a Foreign Attorney Under Local Rule 83.1(D) and a corresponding motion to appear pro hac vice and without local counsel from Mr. Brandt. The court determined that Mr Brandt was not a member of the Virginia State Bar and is not admitted to practice in the United States District Court for the Eastern District of Virginia. Under Local Civil Rule 83.1, an out-of state attorney may not appear or file motions on behalf of a client without the appearance of local counsel. See Loc. Civ. R. 83.1, E.D. Va. Accordingly, the court denied Mr. Brandt's motion to appear pro hac vice on June 18, 2003 and, in a letter dated August 22, 2003, informed the

petitioner that the court could not consider the petition, because it was filed by an attorney without permission to appear in this court.  The court advised the petitioner that if he either chose to appear pro se or engage the services of an attorney admitted to practice before this court, the court could properly review his filings.

On March 11, 2004, the petitioner filed the instant motion and an accompanying memorandum of law (referred to collectively as "the petition") pro se.  The court observes that the substance of both the motion and the memorandum of law are identical to the those that Mr. Brandt attempted to file on June 9, 2003.  Although the petitioner signed both the motion and the memorandum of law, Mr. Brandt signed the certificates of service for both documents.  Additionally, in a letter dated March 9, 2004, Mr. Brandt informed the Clerk's Office that his office, "on behalf of client Leonard Crosby", was forwarding the petition for the court's review.  Mr. Brandt concludes his letter with the statement "[a]gain, these papers are being filed pro se and our firm is not entering its appearance."

On June 15, 2004, the court ordered the government to file a response to the petition within sixty (60) days and provided the petitioner with twenty (20) days to file a reply.  The government filed its response on June 29, 2004.  The petitioner filed his reply memorandum on July 12, 2004.  Again, the petitioner signed the reply but Mr. Brandt signed the certificate of service and failed to date it.  A cover letter from Mr. Brandt also accompanied the petitioner's reply.  It informed the Clerk's Office that the reply memorandum was being filed "[o]n behalf of former client Leonard Crosby."  Mr. Brandt's cover letter also stated "[a]gain, these papers are being filed pro se and our firm is not entering its appearance."  The petitioner filed his supplemental memorandum, in reliance on <u>Blakely</u> and <u>Booker</u>, on April 27, 2005.  This time the

petitioner signed both the memorandum and the certificate of service.

It is patently obvious to the court that in an effort to avoid the court's denial of Mr. Brandt's motion to appear pro hac vice, the petitioner has merely recycled the briefs prepared by Mr. Brandt, signed his name to them, and resubmitted them to the court. While this type of behavior might possibly be expected of an incarcerated litigant who has already paid an attorney to prepare motions and briefs, what is truly troubling is the degree to which Mr. Brandt has been involved in this effort. Mr. Brandt assisted the petitioner in filing both the initial petition and the reply to the government's response. It is his signature on the certificates of service for both of these documents. Furthermore, Mr. Brandt's efforts clearly did not stop with the preparation of the initial petition, which was prepared prior to the court's denial of his motion to appear pro hac vice. The submission of the initial petition is somewhat understandable as it had evidently been prepared at the time of the court's denial of the motion to appear pro hac vice. It fully appears to the court, however, that he also prepared the petitioner's reply brief and supplemental memorandum and assisted the petitioner in submitting the reply brief to the court.

Although Mr. Brandt has stated in two letters to the court that the petitioner has filed these pleadings pro se and has stressed that his firm is not entering an appearance, Mr. Brandt is obviously engaged in preparing pleadings for the petitioner and, equally important, is both aware that his "former client" is submitting this attorney work product to this court and has assisted him in doing so. His statements to the contrary aside, the court is left with the clear impression that Mr. Brandt has filed the pleadings at issue on behalf of the petitioner, at least in substance if not form.

This calculated contravention of Local Civil Rule 83.1 alone should result in the court's

declining to consider the instant petition. The court does not appreciate, nor condone, Mr. Brandt's thinly veiled efforts to circumvent this court's prior order denying him leave to appear in this action. Such behavior is not in keeping with the Local Rules of this court or the standards of professionalism that this court demands of attorneys. The Local Rules provide that any person, who before admission to the bar of this court, exercises any of the privileges of a member of the bar of this court "shall be guilty of contempt of court." See Loc. R. 83.1(H) E.D. Va. Mr. Brandt has walked a fine line in signing certificates of service for motions he evidently prepared, sending them to the court for filing, and yet denying that he was appearing on behalf of the petitioner. In spite of such abuses, the court will proceed to consider the petition. To decline to do so would unfairly penalize the petitioner for the conduct of his attorney.

## II. Discussion

### A. Timeliness of Petition

In his March 11, 2004 petition, the petitioner recognizes the one-year limitation on the filing of petitioner pursuant to 28 U.S.C. § 2255 imposed as a result of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 110 Stat. 1214 (1996). The petitioner claims that his petition was timely filed within the one-year period in which he discovered the facts supporting his claims. In the event that the court finds the petition to be untimely, the petitioner invites the court to review the constitutionality of the one-year filing limitation contained in the AEDPA.

In its response, the government contends that the petition is not timely filed as the filing period ran from the time that the petitioner's conviction became final. In his reply, filed on July 12, 2004, the petitioner claims that the then-recent Supreme Court decision in Blakely v.

Washintgon, 124 S. Ct. 2531 (2004), acts to restart the limitation period in which he may file a petition under section 2255.

A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the United States Constitution or laws, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. See 28 U.S.C. § 2255. The AEDPA, made substantial changes to section 2255. The AEDPA includes stringent limitations on the filing of successive section 2255 petitions and assigns a "gatekeeping" function for the screening of habeas petitions. See Felker v. Turpin, 518 U.S. 651, 664 (1996) (addressing the AEDPA's impact on the Supreme Court's original jurisdiction). Most importantly, for purposes of addressing this petition, the AEDPA implemented a one-year limitation period applicable to the filing of section 2255 petitions. In relevant part, section 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due

>    diligence.

28 U.S.C. § 2255.

As the petitioner did not pursue a direct appeal of his sentence, his conviction became final when the time period for noticing a direct appeal ended.  See Clay v. United States, 537 U.S. 522, 527 (2003) (noting that finality attaches when the time for seeking review expires); Alston v. United States, 235 F. Supp. 2d 477, 478 (D.S.C. 2002) (stating that conviction becomes final ten days after sentencing if no appeal is noticed).  The petitioner's conviction was announced via a judgment entered on March 20, 2000.  It became final ten (10) days later, on or about April 3, 2000, when the time period for filing a notice of appeal lapsed.  See Fed. R. App. P. 4(b).  The instant petition was filed on March 11, 2004, nearly four years after his conviction became final.

The court finds that the date that the petitioner's conviction became final is the triggering date that must be used in applying the AEDPA statute of limitation.  From the petition itself, there has been no showing of any impediment by the government that would have prevented the petitioner from filing the petition at an earlier date.  Nor, as explained more fully below, has the Supreme Court recognized a new right and made this right retroactive on collateral review.  Finally, the claims are based on facts that would have been known to the petitioner at the conclusion of his sentencing.  See 28 U.S.C. § 2255.

These last two instances warrant additional explanation as the petitioner claims he was not aware of the grounds for filing his petition until recently and that Blakely and Booker operate to restart his filing period.  Neither argument has merit.  With respect to his ability to discover the facts supporting the claims, the petitioner claims that he is not an attorney and was not aware

of the time limitations for filing a section 2255 petition. Were such an argument sufficient to restart the AEDPA one-year limitation, it would strip this limitation of all meaning and effect as most habeas petitioners could claim ignorance of the legal basis of their claims. What triggers the one-year limitation is not the petitioner's awareness of the legal grounds for his petition; rather, it is "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Id

The petitioner presents a claim of ineffective assistance of counsel based on his trial counsel's alleged failure to object to the calculation of drug weights for sentencing purposes on the appropriate grounds - namely, that the petitioner was denied his constitutional rights when he was sentenced based on drug weights that were neither admitted by the petitioner nor determined by a jury beyond a reasonable doubt. The petitioner also argues that his counsel failed to file an appeal despite the petitioner's request. Notwithstanding the fact that the petitioner may not have understood the legal basis for these claims until recently, the "facts supporting the . . . claims" were evident at the time of the petitioner's sentencing and when his time for noticing a direct appeal expired. Accordingly, this exception does not restart the AEDPA one-year limitation period. See 28 U.S.C. § 2255.

Furthermore, the decisions in Blakely and Booker do not have the retroactive effect that would permit a finding of timeliness. Under section 2255, a petitioner can attempt to show that the Supreme Court has announced a new rule that is retroactive to cases on collateral review. United States v. Lilly, 342 F. Supp. 2d 532, 539 (W.D. Va. 2004). Such a showing would enable the petitioner to restart the one-year limitation period based on 28 U.S.C. § 2255, paragraph 6(3). Assuming that the decisions announced in Blakely and Booker announced a new rule, it is only

in a narrow class of cases that the new rule will apply retroactively to cases on collateral review. See Schriro v. Summerlin, 124 S. Ct. 2519, 2522 (2004). The petitioner must either show that the new rule is substantive, rather than procedural, or show that the new rule is a "watershed rule of criminal procedure." Id. at 2523.

There is little doubt that the rule announced in Blakely, and extended to the federal sentencing guidelines in Booker, is procedural rather than substantive. No conduct that was forbidden prior to Booker is permitted today. Moreover, the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), upon which both Blakely and Booker relied, has been determined to constitute a procedural rule that does not apply retroactively on collateral review. See Summerlin, 124 S. Ct. at 2523; United States v. Sanders, 247 F.3d 139, 151 (4th Cir. 2001) (finding that rule announced in Apprendi does not apply retroactively on collateral review).

A procedural decision may be applied retroactively if it establishes one of those rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Summerlin, 124 S. Ct. at 2523; Teague v. Lane, 489 U.S. 288, 311 (1989). The rule announced in Blakely and Booker is not such a watershed change. As the Seventh Circuit recently described, "Booker does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the [S]ixth [A]mendment so long as the guideline system has some flexibility in application." McReynolds v. United States, 2005 U.S. App. Lexis 1638, *6 (7th Cir. Feb. 2, 2005).

Accordingly, the court determines that neither Blakely nor Booker apply retroactively and

that these decisions cannot be used to trigger the one-year limitation period for filing a timely section 2255 petition. There is nothing in either Blakely or Booker to suggest that the Supreme Court meant to overrule the many cases holding that Apprendi does not apply retroactively on collateral review. This determination is in line with numerous other courts that have addressed the issue of retroactivity, either in the immediate wake of the Blakely decision, or following the more recent decision in Booker. See id.; Lilly, 342 F. Supp. at 538-39 n.5 (citing cases). In fact, in addition to the Seventh Circuit's decision in McReynolds, each circuit that has addressed the issue of retroactivity in the wake of Booker has determined that the rule announced in that decision is not applicable on collateral review. See United States v. Price, 400 F.3d 844, 849 (10th Cir. Mar. 8, 2005); Humphress v. United States, 398 F.3d 855, 863 (6th Cir. Feb. 25, 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. Feb. 17, 2005); Guzman v. United States, 2005 U.S. App. Lexis 5700, at *12 (2d Cir. April 8, 2005); Loyd v. United States, 2005 U.S. App. Lexis 8699, at *19 (3d Cir. May 17, 2005). Thus, considering that Blakely does not apply to restart the limitation period, the court determines that the one-year period began when the petitioner's conviction became final. See 28 U.S.C. § 2255. As the petitioner's conviction became final some four years prior to the filing of the instant petition, the court concludes that the petition is time-barred.

The court does recognize that it has the authority to toll the application, under equitable principles, of the statute of limitations for a section 2255 petition. See Harris v. Hutchinson, 209 F.3d 325, 328-29 (4th Cir. 2000). The Fourth Circuit has held that the doctrine of equitable tolling is generally appropriate in two distinct situations: where the petitioner was prevented from asserting his claim by some wrongful conduct on the part of the government or where some

extraordinary circumstances beyond the petitioner's control made it impossible to file the claims in a timely manner. Id. at 330.

Principles of equitable tolling do not extend to garden variety claims of excusable neglect. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). As the petitioner has made no claim that a government impediment caused his failure to file a timely petition, equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.'" Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001) (quoting Harris, 209 F.3d at 330). Even assuming that the petitioner seeks to rely on the Supreme Court decisions in Booker and Blakely, such reliance does not constitute grounds for equitable tolling. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (discussing limited grounds available for equitable tolling); see also United States v. Sosa, 364 F.3d 507, 513-14 (4th Cir. 2004) (declining to overturn district court's decision to sua sponte dismiss petitioner's section 2255 motion without prior notice to petitioner because jurists of reason would not find it debatable that equitable tolling was justified). The petitioner has demonstrated no extraordinary circumstances beyond excusable neglect that would explain his untimely filing. See Rouse, 339 F.3d at 246.

The court also rejects the petitioner's attempt to characterize the AEDPA one-year filing limitation as unconstitutional. See Clay, 537 U.S. at 531-32 (describing operation of one-year limitation period); Felker, 518 U.S. at 664 (finding that limitations imposed by AEDPA were illustration of principle that "the power to award the writ by any of the courts of the United States, must be given by written law"). Nor, as the petitioner argues, does this time limitation act to suspend the petitioner's right to file a writ of habeas corpus, rather it imposes a

11

congressionally-intended limitation in order to further the well-established goal of finality in criminal convictions. See United States v. Timmreck, 441 U.S. 780, 784 (1979) (noting that concern with finality of conviction for purposes of limiting collateral attack has special force with respect to convictions based on guilty pleas); Mackey v. United States, 401 U.S. 667, 690 (1971) ("Finality in the criminal law is an end which must always be kept in plain view.").

The petitioner also claims that a dismissal of his petition on timeliness grounds requires the abandonment of legitimate constitutional claims and is, thus, fundamentally unfair. Although the court dismisses the petition on procedural grounds, the court, in reviewing the claims therein, finds that they are without merit and that the petitioner is in no way prejudiced by the court's failure to consider them. The petitioner's reliance on Booker and Blakely, and even on Apprendi v. New Jersey, 530 U.S. 466 (2000), is unavailing because these decisions have not been found to be retroactive on collateral review. Moreover, the petitioner pled guilty to an offense with a maximum penalty of life imprisonment and a mandatory minimum penalty of ten (10) years. See 21 U.S.C. § 846, 841(b)(1)(A). He was sentenced within this range, thus, his constitutional rights were not abridged and his attorney was not ineffective for failing to object to the court's determination of drug weights for sentencing purposes. See Strickland v. Washington, 466 U.S. 668, 686 (1984).

B. Collateral Attack Waiver

Although the petitioner acknowledges that his Plea Agreement contained a waiver of the right to make any collateral attack on his conviction or sentence, or the manner in which it was determined, the petitioner contends that the effect of such a waiver is limited. In support of his argument on this ground, the petitioner cites a number of cases that discuss the availability of a

section 2255 motion where the defendant has entered into a waiver of his appellate rights, rather than his rights to make a collateral attack.

The Fourth Circuit, in United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) recently considered the viability of a provision in a plea agreement, nearly identical to that in the instant case, that purported to waive the right to seek collateral review. In doing so, the Court of Appeals reviewed the district court decision not to address the petitioner's habeas claims on their merits based on the district court's determination that the defendant had knowingly and voluntarily waived his right to collaterally attack his conviction and sentence. See Lemaster, 403 F.3d at 219.

The Lemaster court reviewed the Supreme Court's observation that "[t]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system." Blackledge v. Allison, 431 U.S. 63, 71 (1988). The advantages of plea bargains "can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit in Lemaster found no reason to distinguish the enforceability of a waiver of direct-appeal rights, which has long been recognized as permissible, from a waiver of collateral-attack rights in a plea agreement. See Lemaster, 403 F.3d at 220. The Lemaster court concluded that collateral attack waivers are permissible as long as the waiver is knowing and voluntary. See id.

The petitioner has not claimed that this waiver was unknowing or involuntarily and ["i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). In addition to his written assent to the terms of the Plea Agreement, the

13

petitioner indicated in open court that he understood that his Plea Agreement contained the waiver of the right to make a collateral attack. See (Plea Hearing Trans. pg. 18, Jan. 4, 2000). He also affirmed that he was entering into the Plea Agreement freely and voluntarily. See id. A defendant's declarations in open court affirming a plea agreement "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Such declarations present "a formidable barrier in any subsequent collateral proceedings." Id. The petitioner has not made any effort to overcome such a presumption; thus, the court concludes that his waiver was entered into knowingly and voluntarily.

The petitioner claims that the collateral attack waiver does not encompass his claims of attorney error committed subsequent to the entry of his guilty plea. In Lemaster, the petitioner claimed that his counsel was ineffective in a number of ways, some associated with the plea agreement and others, as in the instant case, associated with alleged instances of ineffectiveness during sentencing. See Lemaster, 403 F.3d at 219. The district court declined to address all ineffective assistance claims unrelated to the knowing and voluntary nature of the collateral attack waiver, and the Fourth Circuit affirmed its finding as to the validity and effect of the waiver. See id. at 217. Accordingly, contrary to the argument of the petitioner, the fact that he premises his section 2255 petition on ineffective assistance of counsel does not prevent this court from determining that the waiver of collateral attack rights contained in the Plea Agreement precludes review of these claims. As the petitioner has not demonstrated that this waiver was unknowing or involuntary, the court determines that he was waived his right to challenge his conviction or sentence in a collateral attack. See id. at 220. For this reason as well, then, the petition must be dismissed.

C. Proceeding under 28 U.S.C. § 2241

Finally, the petitioner argues that if the court finds that his claims cannot proceed under 28 U.S.C. § 2255, that he should be permitted to proceed under 28 U.S.C. § 2241, which provides the courts of the United States with the general power to grant writs of habeas corpus, unrestricted by certain procedural limitations applicable to 28 U.S.C. § 2255.  The petitioner relies on the so called "savings clause" of section 2255, which provides that an application for a writ of habeas corpus, including one sought under section 2241, "by a prisoner who is authorized to apply for relief by motion pursuant to [section 2255], shall not be entertained . . . unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."  See 28 U.S.C. § 2255.

The petitioner concludes that if the court determines his section 2255 petition to be untimely, section 2255 affords him with an "inadequate or ineffective" vehicle by which "to test the legality of his detention." Id.  It is clear, however, that under interpreting caselaw, section 2255 "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision."  In re Jones, 226 F.3d 328, 333 (4th Cir. 2000) (citing cases).  "A contrary rule would nullify the gatekeeping provisions" of the AEDPA.  See id.

The essential function of habeas corpus is to give a prisoner "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence."  In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998).  The petitioner had this opportunity to raise the issues in his petition either on direct appeal or within the one-year period provided to section 2255 litigants.  See id.  This opportunity is enough "to serve that essential function and to satisfy the Constitution."  Id.  As the Eleventh Circuit recognized in Wofford v.

15

Scott, 177 F.3d 1236, 1244 (11th Cir. 1999), such an opportunity for review "does not mean [the petitioner] took the shot, or even that he or his attorney recognized the shot was there for the taking. All the Constitution requires, if it requires that much, is that the procedural opportunity have existed." Wofford, 177 F.3d at 1244. Thus, as the petitioner certainly had the opportunity to raise his claims in a timely filed section 2255 petition, the court finds that his claims do not fit within the section 2255 savings clause, and he is not permitted to access the section 2241 habeas remedy. See id.; see also In re Vial, 115 F.3d 1192, 1194 (4th Cir. 1997) (finding that remedy afforded under section 2255 is not rendered inadequate or ineffective because petitioner is procedurally barred from filing section 2255 motion).

Furthermore, the court observes that a motion under section 2241 should be filed in the United States District Court for the district in which the petitioner is confined. See 28 U.S.C. § 2241(a); Pagan San Miguel v. Dove, 291 F.3d 257, 259 (4th Cir. 2002). It appears that the petitioner is currently incarcerated in a Federal Corrections Institute in Lisbon, Ohio. Thus, any action pursuant to section 2241 should have been initiated in the district court where the petitioner is incarcerated.

### III. Conclusion

Pursuant to the one-year statute of limitation proscribed in the AEDPA and the waiver of the right to make a collateral attack entered into by the petitioner as a part of the Plea Agreement, the petition filed on March 11, 2004 is **DISMISSED**. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural issue, a certificate of appealability is **DENIED**. See Miller-El v. Cockrell, 537 U. S. 322, 336 (2003); Slack v. McDaniel, 529 U. S. 473, 484 (2000) ("Where a plain procedural bar is present

and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

The petitioner is **ADVISED** that he may appeal from the denial of a certificate of appealability by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510 within sixty (60) days from the date of this Order.

The Clerk is **REQUESTED** to mail a copy of this Order to the petitioner, to Mr. Jeffrey M. Brandt, former counsel for the petitioner, and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 22nd, 2005